UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DISTRICT

| | |
|---|---|
| In re: | Chapter 11 |
| CLIFFBREAKERS HOLDINGS, LLC | Case No. 10-71037 |
| Debtors. | |
| | Hon. Manuel Barbosa |
| In re: | Chapter 11 |
| CLIFFBREAKERS RIVERSIDE RESORT, LLC | Case No. 10-71036 |
| Debtors. | |
| | Hon. Manuel Barbosa |
| In re: | Chapter 11 |
| CLIFFBREAKERS PROPERTY INVESTMENTS, LLC | Case No. 10-71038 |
| Debtors. | Hon. Manuel Barbosa |

## NOTICE OF MOTION

To:   See Attached Service List

PLEASE TAKE NOTICE that on **Monday, March 8, 2010 at 10:30 a.m.** or as soon thereafter as counsel may be heard, we will appear before United States Bankruptcy Judge Manuel Barbosa, or any other judge sitting in his stead, in Courtroom 115 of the Federal Courthouse, 211 South Court Street, Rockford, Illinois, on the attached **DEBTORS' EMERGENCY MOTION FOR ENTRY OF AN INTERIM ORDER (A) AUTHORIZING USE OF CERTAIN CASH COLLATERAL AND (B) GRANTNG SUBSTITUTE AND ADDITIONAL LIENS AND OTHER RELIEF**, at which time and place you may appear as you see fit.

Dated: March 5, 2010

CLIFFBREAKERS RIVERSIDE
RESORT, LLC and CLIFFBREAKERS
PROPERTY INVESTMENTS, LLC
Debtors and Debtors in Possession

By:___/s/ Miriam R. Stein_____
      One of Their Proposed Attorneys

Philip E. Ruben
Miriam R. Stein
Kevin H. Morse
ARNSTEIN & LEHR LLP
120 S. Riverside Plaza, Suite 1200
Chicago, IL 60606
Tel: (312) 876-7100
Fax: (312) 876-0288

## CERTIFICATE OF SERVICE

I, Miriam R. Stein, an attorney, certify that I caused a copy of the attached Notice of Motion and Motion to be served on the parties listed on the attached Service List, via facsimile, in addition to those parties receiving notification by participation in the Court's ECF system on March 5, 2010.

/s/ Miriam R. Stein

8924661.1

# CLIFFBREAKERS LIST OF
# INTERESTED PARTIES AND LARGEST CREDITORS
# <u>FACSIMILE SERVICE</u>

Cliffbreakers Riverside Resort LLC
Cliffbreakers Holdings, LLC
Cliffbreakers Property Investments LLC
700 West Riverside Boulevard
Rockford, IL 61103-2173
Via E-Mail

Carole Ryczek
Office of the U.S. Trustee
780 Regent Street, Suite 304
Madison, WI 53715
Fax: 608-264-5182
Email: carole.ryczek@usdoj.gov

Internal Revenue Service
P.O. Box 21126
Philadelphia, PA 19114
Fax: 215-516-2015

Internal Revenue Service
Mail Stop 5010 CHI
230 S. Dearborn Street, Suite 2300
Chicago, IL 60606
Fax: 312-566-2826

Associate Area Counsel SB/SE
200 W. Adams Street, Suite 2300]
Chicago, IL 60606
Fax: 312-368-8710

Joel Nathan
United States Attorney
219 South Dearborn Street
Chicago, IL 60604
Fax: 312-886-0657

D. Patrick Mullarkey
Tax Division (DOJ)
P.O. Box 55 – Ben Franklin Station
Washington, DC 20044
Fax: 202-514-5238

Illinois Department of Revenue
101 W. Jefferson Street
Springfield, IL 62702
Fax: 217-557-4390

Illinois Department of Revenue
100 W. Randolph Street, 7th Floor
Chicago, IL 60601
Fax: 312-814-3512

Assistant Attorney General
Revenue Litigation Bureau
100 W. Randolph Street, 13th Floor
Chicago, IL 60601
Fax: 312-814-3589

David M. Neff, Esq.
Perkins Coie LLP
131 S. Dearborn Street, Suite 1700
Chicago, IL 60603
Fax: 312-324-9689

Andrea C. Riegsecker
Executive Vice President
Aries Capital, LLC
520 W. Erie Street, Suite 300 S
Chicago, IL 60654
Fax: 866-796-0653

James Barker
Vice President
Fifth Third Bank
101 West Stephenson Street
P.O. Box 297
Freeport, IL 61032

Fax: 815-233-6031

Neil D. Freeman
President
Aries Capital
350 W. Erie Street, Suite 150
Chicago, IL 60610
Fax: 312-642-9291

City of Rockford
Finance Department
425 E. State Street
Rockford, IL 61104
Fax: 815-961-3154

Aramark
P.O. Box 7177
Rockford, IL 61128
Fax: 800-436-3132

Commonwealth Edison Company
Legal Recovery/Claims Department
Three Lincoln Center
Oakbrook Terrace, IL 60101
Fax: 630-576-6388

Integrys Energy Services
P.O. Box 19046
Green Bay, WI 54307
Fax: 920-617-6070

John Faber
1730 Oxford Street
Rockford, IL 61103
Fax: 423-374-0480

NICOR Gas
Bill Payment Center
Aurora, IL 60568
Fax: 630-983-6755

Reinhart
9950 S. Reinhart Drive
Oak Creek, WI 53154
Fax: 800-827-4010

The Plitt
Dept. 20-1108
Carol Stream, IL 60197
Fax: 773-276-8537

Turano
6501 West Roosevelt Road
Berwyn, IL 60402
Fax: 708-788-3075

UW Provision Co.
2315 Pleasant View Road
Middleton, WI 53362
Fax: 608-836-6328

Vantage Hospitality Group Inc.
9305 W. Sample Road
Pompano Beach, FL 33065
Fax: 954-575-2875

**UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DISTRICT**

| | |
|---|---|
| IN RE: ) | CHAPTER 11 |
| ) | Case No. 10-71037 |
| CLIFFBREAKERS HOLDINGS, LLC, ) | |
| ) | Hon. Manuel Barbosa |
| Debtor. ) | |
| In re: ) | Chapter 11 |
| ) | Case No. 10-71036 |
| CLIFFBREAKERS RIVERSIDE ) | |
| RESORT, LLC, ) | Hon. Manuel Barbosa |
| ) | |
| Debtor. ) | |
| In re: ) | Chapter 11 |
| ) | Case No. 10-17038 |
| CLIFFBREAKERS PROPERTY ) | |
| INVESTMENTS, LLC, ) | Hon. Manuel Barbosa |
| ) | |
| Debtor. ) | |

## DEBTORS' EMERGENCY MOTION FOR ENTRY OF AN INTERIM ORDER (A) AUTHORIZING USE OF CERTAIN CASH COLLATERAL AND (B) GRANTING SUBSTITUTE AND ADDITIONAL LIENS AND OTHER RELIEF

Cliffbreakers Holdings, LLC ("Holdings"), Cliffbreakers Riverside Resort, LLC ("Resort"), Cliffbreakers Property Investments, LLC ("Investments"), debtors and debtors in possession (collectively "Debtors") hereby move on an emergency basis for the entry of an interim order (A) authorizing the Debtors to use certain "Cash Collateral" (as defined in section 363(a) of the United States Bankruptcy Code, 11 U.S.C. §101, et. seq. (the "Bankruptcy Code") and hereinafter referred to as "Cash Collateral"), all of which Cash Collateral is presently subject to senior security interests, liens, mortgages and rights of setoff of Fifth Third Bank ("Fifth Third"), and junior security interests, liens, mortgages and rights of setoff of Aries Real Estate Fund, LLC f/k/a Freeman Realty

8926170.2

Advisors, Inc. ("Aries" and together with Fifth Third, the "Lenders"), and (B) granting certain substitute and additional liens and other relief for the benefit of the Lenders; and the Lenders having consented to the use of certain Cash Collateral pursuant to the terms of this Interim Order. In support of the Motion, the Debtors state as follows:

## JURISDICTION

1. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334.

2. Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409. This Motion is a core proceeding pursuant to 28 U.S.C. § 157(b).

3. The statutory predicates for the relief requested herein are Sections 361, 362 and 363 of the United States Bankruptcy Code, Rules 2002, 4001, and 9014 of the Federal Rules of Bankruptcy Procedure.

## BACKGROUND

4. On March 5, 2010 ("Petition Date"), the Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases"). On the same date, the Debtors filed a Motion for Joint Administration of Related Chapter 11 Cases.

5. Pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code, the Debtors continue to operate their business and manage their financial affairs as Debtors-in- possession. No trustee, examiner or committee has been appointed in the Chapter 11 Cases.

6. The Debtors are Illinois limited liability companies with their principal places of business in Rockford Illinois. Holdings is the parent company and holds 100% membership interest in Resort and Investments. Investments holds title to the property

located at 700 W. Riverside in Rockford, Illinois (the "Property"). Resort operates the Property as a restaurant, banquet hall and hotel under the name of *Cliffbreakers Riverside Resort*.

7.  The downturn in the economy in general and the economic conditions in Rockford in particular have had a negative impact on the operations of the restaurant, banquet hall and hotel. As a result, the Debtors have incurred diminished income and have defaulted on their secured debt obligations and certain taxes and have incurred unsecured debt, which has precipitated the filing of the Chapter 11 Cases. However, the Debtors intend to restructure their debt through a plan of reorganization within the next 90 to 120 days. In the meantime, the Debtors shall maintain normal operations throughout the Chapter 11 proceedings including the preservation of jobs, servicing events such as weddings, company parties and fundraising events, and ensuring continued operation of the hotel, banquet and restaurant functions at the same level of service and quality customers received prior to the restructuring process.

8.  The Debtors are indebted to Fifth Third pursuant to a Mortgage, Security Agreement, Assignment of Rents and Leases and Fixture Filing dated November 6, 2003 (the "Fifth Third Mortgage"), a Promissory Note dated November 3, 2006 in the principal sum of $11,280,000 (the "Fifth Third Promissory Note"), and a Revolving Note dated March 20, 2007 in the principal sum of $100,000 (the "Fifth Third Revolving Note" and together with the Fifth Third Mortgage, the Fifth Third Promissory Note, and all other loan documents executed by the Debtors in connection therewith, the "Fifth Third Loan Documents"). Pursuant to the Fifth Third Loan Documents, Fifth Third agreed to make, and has made, various advances to the Debtors (the "Fifth Third Loan"), and, as

a result thereof, on the Petition Date, the Debtors were indebted to Fifth Third pursuant to the Fifth Third Loan Documents in the original principal amount of $11,433,010.88 (that principal amount, together with all interest, fees, costs, expenses and other amounts now or hereafter owing or accruing pursuant to the Fifth Third Loan Documents are collectively referred to hereinafter as the "Fifth Third Indebtedness"). The Fifth Third Indebtedness is secured by all or substantially all of the Debtors' assets, including, without limitation the Property (such assets immediately prior to the Petition Date being referred to herein as the "Prepetition Collateral") pursuant to the Fifth Third Mortgage.

9. The Debtors are also indebted to Aries (the "Aries Indebtedness") pursuant to a Loan and Security Agreement and Promissory Note in the principal amount of $1,500,000 (together with all other loan documents executed by the Debtors, the "Aries Loan Documents"). The Aries Indebtedness is secured by a junior lien on and security interest in all of the Prepetition Collateral, which liens and security interests are junior in all respects to those of Fifth Third in the Prepetition Collateral.

## RELIEF REQUESTED

10. By this Motion, the Debtors seek the entry of an interim order ("Interim Order") authorizing the Debtors' use of cash collateral under the terms described below and in accordance with the cash collateral budget attached hereto as <u>Exhibit A</u> (the "Budget"), and the entry of a final order after proper notice and hearing.

11. Upon information and belief, the Lenders consent to the Debtor's use of Cash Collateral pursuant to the terms of the Budget and the terms of the Interim Order.

4

8926170.2

12. By separate motion, the Debtors are also seeking approval of debtor in possession financing from a third party source unrelated to the Lenders in the amount of $250,000 (the "Proposed DIP Financing")[1]. Upon approval by the Court, the Proposed DIP Financing would be in the form of a line of credit and would be used by the Debtors in the event that its Cash Collateral is not sufficient to cover operating expenses delineated on the Budget and other administrative expenses associated with the Chapter 11 Cases such as professional fees and statutory fees owed to the U.S. Trustee. The Proposed DIP Financing shall be on a super-priority basis and secured by liens on and security interests in the Collateral senior to the lien positions of the Lenders.

## BASIS FOR RELIEF

13. For the purposes of this Motion and the Interim Order, the term "Cash Collateral" means the Debtors' available cash and the rents and other charges collected by the Debtors in any manner from the possession or use of the hotel, banquet and restaurant operations (the "Cash Collateral").

14. An emergency need exists for the Debtors to use Cash Collateral in order to maintain their business operation. The Debtors require Cash Collateral for the payment of, *inter alia*, operating expenses, payroll, and the purchase of inventory and supplies to meet other expenses necessary to preserve their assets and continue their operation.

15. There is insufficient time for a full hearing to be held before the Debtors must use the Cash Collateral. If this Motion is not considered on an expedited basis,

---

[1] $95,000 of the proposed DIP Financing has been paid to Debtors' counsel for payment of a pre-petition retainers in the approximate amount of $50,000 and $10,000, respectively, and for payment of work relating to the preparation of the Chapter 11 Cases.

5

8926170.2

and if the Debtors are denied the ability to immediately use the Cash Collateral, there will be a direct and immediate material and adverse impact on the continuing operation of the Debtors' business and on the value of their assets. In order to achieve a successful reorganization, the Debtors must use the Cash Collateral in their ordinary business operations. The Debtors' inability to pay its ordinary business expenses will require them to discontinue normal operations which will result in irreparable injury to the Debtors and their chances for reorganization.

16. The Lenders will not agree to consent to the usage of Cash Collateral except on the terms and conditions contained in this Interim Order and are relying on such terms and conditions in agreeing to the Debtors' use of Cash Collateral on the terms hereof. It is necessary and appropriate for the Debtors to grant to the Lenders liens, security interests and mortgages in the property of the Estates as set forth in this Interim Order and to provide the Lenders the other rights and protections set forth herein.

17. If allowed to use the Cash Collateral, the Debtors believe that they can maintain their business operations during these Chapter 11 Cases as they seek to propose a plan of reorganization.

18. The terms for the use of the Cash Collateral, as detailed below in subsection A, is fair and reasonable, and the proposed adequate protection for the Lenders, detailed in subsection B, will preserve the value of the Lender's Collateral.

A.  **USE OF CASH COLLATERAL**

19. Section 363 of the Bankruptcy Code governs a debtor's ability to use, sell, or lease property of the estate. Section 363(c)(2) of the Bankruptcy Code restricts a debtor's ability to use the Cash Collateral and provides, in pertinent part:

> The trustee [or debtor in possession] may not use, sell, or lease cash collateral under paragraph (1) of this subsection unless –
> (a) each entity that has an interest in such cash collateral consents; or
> (b) the court, after notice and a hearing, authorizes the such use, sale, or lease in accordance with the provision of this section.

*Id.*

20. Section 363(a) of the Bankruptcy Code defines cash collateral as, *inter alia*, "the proceeds, products, profits, offspring, rents or profits of property." 11 U.S.C. § 363(a). As stated above, and for the purposes of this Motion, the Lender's cash collateral consists of the rents and other charges collected by the Debtors in any manner from the renting or other possession or use of Resort's restaurant, banquet and hotel.

21. Here, by agreement between the Lenders and the Debtors, the Debtors shall be authorized to use Cash Collateral in the amounts and for the purposes set forth on the Budget attached as <u>Exhibit A</u>. Unused budgeted amounts for any month shall roll over to the next month. The Debtors will be allowed to deviate from the Budget in an amount no more than 10% per line item per month to the extent necessary to operate their business through confirmation of the Plan and/or a sale of substantially all of the Debtors' assets. Notwithstanding anything to the contrary, the Debtors cannot use any Cash Collateral to compensate legal services rendered to or expenses incurred

7

by the Debtors unless the Debtors confirm a plan of reorganization acceptable to Fifth Third.

22. The Debtors' authority to use Cash Collateral will terminate on the earlier of: (a) the termination date set forth in the Interim Order; (b) 28 days after Fifth Third provides notice to the Debtors that it is terminating its consent to the use of Cash Collateral; (c) the entry by this Court of an order reversing, amending, supplementing, staying, vacating or otherwise modifying the terms of the Interim Order; (d) the conversion of one or more of the Debtors' cases to a case under chapter 7 of the Bankruptcy Code; (e) the appointment of a trustee or examiner or other representative with expanded powers for the Debtors; or (f) the occurrence of the effective date or consummation of a plan of reorganization.

### B.  ADEQUATE PROTECTION

23. Pursuant to Section 363(c)(2)(B) of the Bankruptcy Code, a debtor-in-possession may use the Cash Collateral with court approval after notice and a hearing. 11 U.S.C. § 363(c)(2)(B). Section 363(e) of the Bankruptcy Code provides that, upon request of an entity that has an interest in property to be used by a debtor, the Court "shall prohibit or condition such use . . . as is necessary to provide adequate protection of such interest." 11 U.S.C. § 363(e). Here, the Court should approve the Debtor's proposed use of the Cash Collateral because the Bank's interests in the Cash Collateral will be adequately protected during the Debtor's continued business operations.

24. Adequate protection can be provided through a number of different methods. Section 361 of the Bankruptcy Code provides that adequate protection may be provided by (1) "providing to [an] entity an additional or replacement lien to the extent

that such ... use . . . results in a decrease in the value of [the] entity's interest in such property" or (2) "granting such other relief . . . as will result in the realization by [an] entity of the indubitable equivalent of [the] entity's interest in such property." 11 U.S.C. §§ 361(1), (2), (3).

25. "Adequate protection is a means of preserving a creditor's interest in secured collateral subject to post-petition use by the debtor." In re Carpet Center Leasing Co., Inc., 991 F.2d 682, 686 (11th Cir. 1993). What constitutes adequate protection is determined on a case-by-case basis. See MBank Dallas, N.A. v. O'Connor (In re O'Connor), 808 F.2d 1393, 1396-97 (10th Cir. 1987); In re Martin, 761 F.2d 472 (8th Cir. 1985). Simply stated, adequate protection is necessary only to the extent the use of the creditor's collateral will result in a decrease in "the value of such entity's interest in such property." 11 U.S.C. §§ 361, 363(e); See United Savings Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd., 484 U.S. 365, 370-73 (1988) (the "interest in property" entitled to protection is "the value of the collateral" securing the claim).

26. It is in the Lenders' interests that the Debtors be allowed to use the Cash Collateral. First, the Lenders' collateral will be substantially impaired if the Debtors halt operations and does not have the ability to quickly restart their operations. Also, use of the Cash Collateral allows the Debtors to preserve the status quo and provide the Debtors an opportunity to reorganize for the benefit of all creditors.

27. As noted above, section 361(2) of the Bankruptcy Code expressly provides that the granting of a replacement lien constitutes a means of providing adequate protection. 11 U.S.C. § 361(2). Here, the Debtors request that the Lenders be granted replacement liens in the post-petition Collateral, including in all cash received

post-petition, to the same extent and priority as the Lenders' respective pre-petition liens and security interests.

28.  The Debtors believe that the adequate protection described above is reasonable and in the best interest of its estate. As such, the Debtors request the Court grant the foregoing adequate protection to the Lenders.

29.  The Debtors requests that the Court conduct an emergency hearing pursuant to Rule 4001(b)(2), and conduct a final hearing on not less than 15 days notice.

## NOTICE OF INTERIM AND FINAL HEARING

30.  Notice of this Motion has been given to: (a) the Office of the United States Trustee; (b) Lenders; (c) any and all relevant taxing authorities; (d) any other creditor asserting an interest in the assets of the Debtors; (e) any other party who has requested notice in the Bankruptcy Case and (f) the list of twenty (20) largest unsecured creditors of the Debtors (the "Service List"). In light of the nature of the relief requested, the Debtors submit that no further notice need be given.

31.  The Debtors request that they be authorized to serve a copy of the signed interim order authorizing the use of the Cash Collateral which fixes the time and date for filing with objections, if any, by first class mail upon the Service List and all other parties that have filed appearances in this case or as otherwise directed by this Court. The Debtors request that the Court consider such notice of the final hearing to be sufficient notice under Bankruptcy Rule 4001.

8926170.2

## CONCLUSION

WHEREFORE, the Debtors respectfully request that the Court enter an order: (a) granting the Motion; (b) authorizing the Debtors' use of Cash Collateral pursuant to the terms of the proposed Interim Order; (c) granting the Lenders adequate protection under 11 U.S.C. §§ 361 and 363; and (d) granting such other and further relief as is just and proper.

Dated: March 5, 2010

>Respectfully submitted,
>
>CLIFFBREAKERS HOLDINGS, LLC,
>CLIFFBREAKERS RIVERSIDE RESORT, LLC
>and CLIFFBREAKERS PROPERTY
>INVESTMENTS, LLC
>
>By:  /s/ Miriam R. Stein
>         One of Its Attorneys

Philip E. Ruben
Miriam R. Stein
Kevin H. Morse
ARNSTEIN & LEHR LLP
120 South Riverside Plaza, Suite 1200
Chicago, Illinois 60606-3910
312.876.7125 (Telephone)
312.876.6260 (Facsimile)

8926170.2