**UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DISTRICT**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | Case No. 10-71037 |
| CLIFFBREAKERS HOLDINGS, LLC, | ) | |
| | ) | Hon. Manuel Barbosa |
| | ) | |
| Debtor. | ) | |
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | Case No. 10-71036 |
| CLIFFBREAKERS RIVERSIDE RESORT, LLC, | ) | |
| | ) | Hon. Manuel Barbosa |
| | ) | |
| Debtor. | ) | |
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | Case No. 10-17038 |
| CLIFFBREAKERS PROPERTY INVESTMENTS, LLC, | ) | |
| | ) | Hon. Manuel Barbosa |
| | ) | |
| Debtor. | ) | |

**NOTICE OF MOTION**

To:   See attached Service List

   PLEASE TAKE NOTICE that on **Monday, March 8, 2010 at 10:30 a.m.** or as soon thereafter as counsel may be heard, we will appear before United States Bankruptcy Judge Manuel Barbosa, in Courtroom 115 of the Federal Courthouse, 211 S. Court Street, Rockford, IL 61101, and then and there present the attached **EMERGENCY Motion for Interim Order Authorizing Debtors to Incur Post-Petition Debt and Grant Certain Liens and other Relief to Proposed DIP Lender**, at which time and place you may appear as you see fit.

                    CLIFFBREAKERS HOLDINGS, L.L.C. et al

                    By:   /s/ Miriam R. Stein
                          One of Their Proposed Attorneys

Barry A. Chatz (ARDC #06196639)
Miriam R. Stein (ARDC #06238163)
ARNSTEIN & LEHR LLP
120 S. Riverside Plaza, Suite 1200
Chicago, IL 60606
Phone: (312) 876-7100
Fax: (312) 876-0288

1

8926319.2

## PROOF OF SERVICE

I, Miriam R. Stein, an attorney, certify that I caused a copy of this notice and the document referenced herein to be served on the parties listed on the attached service list by facsimile on March 5, 2010.

By:   /s/ Miriam R. Stein

# CLIFFBREAKERS LIST OF
# INTERESTED PARTIES AND LARGEST CREDITORS
# FACSIMILE SERVICE

Cliffbreakers Riverside Resort LLC
Cliffbreakers Holdings, LLC
Cliffbreakers Property Investments LLC
700 West Riverside Boulevard
Rockford, IL 61103-2173
Via E-Mail

Carole Ryczek
Office of the U.S. Trustee
780 Regent Street, Suite 304
Madison, WI 53715
Fax: 608-264-5182
Email: carole.ryczek@usdoj.gov

Internal Revenue Service
P.O. Box 21126
Philadelphia, PA 19114
Fax: 215-516-2015

Internal Revenue Service
Mail Stop 5010 CHI
230 S. Dearborn Street, Suite 2300
Chicago, IL 60606
Fax: 312-566-2826

Associate Area Counsel SB/SE
200 W. Adams Street, Suite 2300]
Chicago, IL 60606
Fax: 312-368-8710

Joel Nathan
United States Attorney
219 South Dearborn Street
Chicago, IL 60604
Fax: 312-886-0657

D. Patrick Mullarkey
Tax Division (DOJ)
P.O. Box 55 – Ben Franklin Station
Washington, DC 20044
Fax: 202-514-5238

Illinois Department of Revenue
101 W. Jefferson Street
Springfield, IL 62702
Fax: 217-557-4390

Illinois Department of Revenue
100 W. Randolph Street, 7th Floor
Chicago, IL 60601
Fax: 312-814-3512

Assistant Attorney General
Revenue Litigation Bureau
100 W. Randolph Street, 13th Floor
Chicago, IL 60601
Fax: 312-814-3589

David M. Neff, Esq.
Perkins Coie LLP
131 S. Dearborn Street, Suite 1700
Chicago, IL 60603
Fax: 312-324-9689

Andrea C. Riegsecker
Executive Vice President
Aries Capital, LLC
520 W. Erie Street, Suite 300 S
Chicago, IL 60654
Fax: 866-796-0653

James Barker
Vice President
Fifth Third Bank
101 West Stephenson Street
P.O. Box 297
Freeport, IL 61032

Fax: 815-233-6031

Neil D. Freeman
President
Aries Capital
350 W. Erie Street, Suite 150
Chicago, IL  60610
Fax: 312-642-9291

City of Rockford
Finance Department
425 E. State Street
Rockford, IL  61104
Fax: 815-961-3154

Aramark
P.O. Box 7177
Rockford, IL  61128
Fax: 800-436-3132

Commonwealth Edison Company
Legal Recovery/Claims Department
Three Lincoln Center
Oakbrook Terrace, IL  60101
Fax: 630-576-6388

Integrys Energy Services
P.O. Box 19046
Green Bay, WI  54307
Fax: 920-617-6070

John Faber
1730 Oxford Street
Rockford, IL  61103
Fax:  423-374-0480

NICOR Gas
Bill Payment Center
Aurora, IL  60568
Fax: 630-983-6755

Reinhart
9950 S. Reinhart Drive
Oak Creek, WI  53154
Fax: 800-827-4010

The Plitt
Dept. 20-1108
Carol Stream, IL  60197
Fax: 773-276-8537

Turano
6501 West Roosevelt Road
Berwyn, IL  60402
Fax: 708-788-3075

UW Provision Co.
2315 Pleasant View Road
Middleton, WI  53362
Fax: 608-836-6328

Vantage Hospitality Group Inc.
9305 W. Sample Road
Pompano Beach, FL  33065
Fax: 954-575-2875

8923182.1

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**WESTERN DISTRICT**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | Case No. 10-71037 |
| CLIFFBREAKERS HOLDINGS, LLC, | ) | |
| | ) | Hon. Manuel Barbosa |
| Debtor. | ) | |
| In re: | ) | Chapter 11 |
| | ) | Case No. 10-71036 |
| CLIFFBREAKERS RIVERSIDE RESORT, LLC, | ) | |
| | ) | Hon. Manuel Barbosa |
| Debtor. | ) | |
| In re: | ) | Chapter 11 |
| | ) | Case No. 10-17038 |
| CLIFFBREAKERS PROPERTY INVESTMENTS, LLC, | ) | |
| | ) | Hon. Manuel Barbosa |
| Debtor. | ) | |

**EMERGENCY MOTION FOR AN INTERIM ORDER AUTHORIZING DEBTORS TO (I) INCUR POST PETITION DEBT; (II) GRANT CERTAIN LIENS AND OTHER RELIEF TO PROPOSED DIP LENDER; AND (III) SCHEDULE A FINAL HEARING**

CLIFFBREAKERS HOLDINGS, L.L.C. ("Holdings"), CLIFFBREAKERS RIVERSIDE RESORT, L.L.C. ("Resort"), CLIFFBREAKERS PROPERTY INVESTMENTS, L.L.C. ("Investments"), debtors and debtors in possession (collectively, the "Debtors") hereby submit this emergency motion (the "Motion") for entry of interim order (I) authorizing Debtors to incur post-petition debt ("DIP Financing") on a super priority basis pursuant to 11 U.S.C. §§105, 361, 362, 364(c)(1), 364(d)(1) and 507(b) of the United States Bankruptcy Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code") and Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") 2002, 4001(c)

3

8926319.2

and 9014 from Victor Mattison or his designee ("DIP Lender")[1] pursuant to the terms of a Mortgage and Security Agreement and Revolving Line of Credit Promissory Note (collectively, the "DIP Loan Documents"); and (ii) providing other relief; and (iii) scheduling a final hearing to consider entry of a final order authorizing the DIP Financing. In support of this Motion, the Debtors respectfully state as follows:

## BACKGROUND

1.     On March 5, 2010 ("Petition Date"), the Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases"). On the same date, the Debtors filed a Motion for Joint Administration of Related Chapter 11 Cases.

2.     Pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code, the Debtors continue to operate their business and manage their financial affairs as Debtors-in- possession. No trustee, examiner or committee has been appointed in the Chapter 11 Cases.

3.     The Debtors are Illinois limited liability companies with their principal places of business in Rockford Illinois. Holdings is the parent company and holds 100% membership interest in Resort and Investments. Investments holds title to the property located at 700 W. Riverside in Rockford, Illinois (the "Property"). Resort operates the Property as a restaurant, banquet hall and hotel under the name of *Cliffbreakers Riverside Resort*.

4.     The downturn in the economy in general and the economic conditions in Rockford in particular have had a negative impact on the operations of the restaurant,

---

[1] Victor Mattison is the authorized manager for the Debtors.

4

banquet hall and hotel. As a result, the Debtors have incurred diminished income and have defaulted on their secured debt obligations and certain taxes and have incurred unsecured debt, which has precipitated the filing of the Chapter 11 Cases. However, the Debtors intend to restructure their debt through a plan of reorganization within the next 90 to 120 days. In the meantime, the Debtors shall maintain normal operations throughout the Chapter 11 cases including the preservation of jobs, servicing events such as weddings, company parties and fundraising events, and ensuring continued operation of the hotel, banquet and restaurant functions at the same level of service and quality customers received prior to the restructuring process.

5.    The Debtors are indebted to Fifth Third pursuant to a Mortgage, Security Agreement, Assignment of Rents and Leases and Fixture Filing dated November 6, 2003 (the "Fifth Third Mortgage"), a Promissory Note dated November 3, 2006 in the principal sum of $11,280,000 (the "Fifth Third Promissory Note"), and a Revolving Note dated March 20, 2007 in the principal sum of $100,000 (the "Fifth Third Revolving Note" and together with the Fifth Third Mortgage, the Fifth Third Promissory Note, and all other loan documents executed by the Debtors in connection therewith, the "Fifth Third Loan Documents"). Pursuant to the Fifth Third Loan Documents, Fifth Third agreed to make, and has made, various advances to the Debtors (the "Fifth Third Loan"), and, as a result thereof, on the Petition Date, the Debtors were indebted to Fifth Third pursuant to the Fifth Third Loan Documents in the original principal amount of $11,433,010.88 (that principal amount, together with all interest, fees, costs, expenses and other amounts now or hereafter owing or accruing pursuant to the Fifth Third Loan Documents are collectively referred to hereinafter as the "Fifth Third Indebtedness").

The Fifth Third Indebtedness is secured by all or substantially all of the Debtors' assets, including, without limitation the Property (such assets immediately prior to the Petition Date being referred to herein as the "Prepetition Collateral") pursuant to the Fifth Third Mortgage.

6.  The Debtors are also indebted to Aries (the "Aries Indebtedness") pursuant to a Loan and Security Agreement and Promissory Note in the principal amount of $1,500,000 (together with all other loan documents executed by the Debtors, the "Aries Loan Documents"). The Aries Indebtedness is secured by a junior lien on and security interest in all of the Prepetition Collateral, which liens and security interests are junior in all respects to those of Fifth Third in the Prepetition Collateral.

7.  Pursuant to the attached cash flow budget ("Budget"), the Cliffbreakers Resort will generate approximately $215,000 in income during the next four (4) weeks from its hotel, banquet and restaurant operations. A copy of the Budget is attached hereto as Exhibit A. The Budget also delineates the Debtor's weekly operating expenses. In addition to the operational expenses, the Debtors will incur administrative expenses related to the administration of the Debtors' bankruptcy cases, which shall include without limitation, professional fees, statutory U.S. Trustee fees, utility deposits and additional costs relating to the operations of a Chapter 11 debtor.

## THE DEBTORS' NEED FOR POST-PETITION FINANCING

8.  As a result of the anticipated administrative expenses and the operational expenses, the Debtors have an immediate need for post-petition financing to pay the expenses set forth on the Budget to the extent that the Debtors' cash collateral is insufficient to satisfy the expenses.

8926319.2

9.      Concurrent with the filing of this Motion, the Debtors have filed a Motion requesting immediate authority to use its operating cash that is subject to its Lenders pre-petition liens and security interests (the "Cash Collateral"). Upon information and belief, the Lenders have consented to the Debtors' use of Cash Collateral pursuant to the terms of an Agreed Interim Order Authorizing the Limited Use of Cash Collateral and Granting Adequate Protection (the "Interim Cash Collateral Order") and the Budget. However, the Lenders are unwilling to lend the Debtors additional funds required to satisfy operational and administrative expenses incurred over and above its monthly income.

10.     Without the financing requested herein, the Debtors will be unable to meet their limited short-term expenses set forth on Exhibit A and satisfy their Chapter 11 administrative expenses.

## RELIEF REQUESTED

11.     By this Motion, the Debtors request authorization: (a) to borrow up to $155,000 on a revolving line of credit ("DIP Financing")[2] from the DIP Lender pursuant to the terms of the DIP Loan Documents, copies of which are attached hereto as Exhibit B and (b) to spend such amounts as necessary: (i) to satisfy the Debtors' ongoing operating and administrative expenses set forth on Exhibit A to the extent not otherwise satisfied through Cash Collateral; and (ii) to pay all allowed fees and expenses of the

---

[2] A total of $250,000 will be made available by the DIP Lender. Of the $250,000, $95,000 was paid prior to the Petition Date for payment of Debtors' counsels' pre-petition retainers ($50,000 and $10,000, respectively) and for payment of legal work preparing for the Debtors' bankruptcy filings.

7

8926319.2

Debtors' professionals. Some of the key terms of the proposed DIP Financing are as follows:[3]

**Amount and Nature of Facility**. The Debtors are authorized to borrow up to $155,000[4] under a revolving line of credit and to use such cash as necessary to: (a) pay the expenses set forth on Exhibit A (subject to the Interim Cash Collateral Order approved by the Court) and to the extent the expenses are not otherwise satisfied through the Debtors' Cash Collateral; and (b) pay all fees and expenses of Debtors' professionals allowed by the Bankruptcy Court.

**Binding Obligations.** The DIP Financing pursuant to the Interim Order shall constitute a valid and binding obligation of the Debtors, enforceable against the Debtors in accordance with its terms. No obligation, payments, transfer or grant of security under the Interim Order shall be stayed, strained, voidable or recoverable under the Bankruptcy Code, or under any applicable law, or subject to any defense, reduction, offset or counterclaim.

**Interim Financing and Termination of Facility**. The Interim Order shall provide that the Debtors are authorized to use their incoming cash receipts to satisfy the Budgeted expenses, and if necessary borrow against the available DIP Financing to satisfy the remaining Budget expenses, which shall be subject to the Interim Cash Collateral Order approved by the Court. The use of DIP Financing shall terminate on the earlier of (i) a date which is 120 days after issuance date; or (ii) the effective date of a confirmed plan of reorganization (the "Maturity Date"). The DIP Lender will not have any obligation or responsibility to monitor the Debtors' use of the DIP Financing and may rely on the Debtors' reporting and representations that the amount of the DIP Financing requested at any time, and the use thereof, is in accordance with the requirements of the Budget and the Interim Order. So long as the Debtors generate sufficient cash to perform their obligations and pay the expenses provided for under the Budget, they shall have no right or obligation to borrow the post-petition advances from the DIP Lender authorized by the Interim Order, other than to pay all fees and expenses of Debtors' professionals allowed by the Bankruptcy Court.

**Superpriority Claims.** Pursuant to section 364(c)(1) of the Bankruptcy Code, all of the Debtors' obligations, indebtedness and liabilities arising under or in respect of the DIP Financing and the Interim Order (collectively, the "DIP Obligations") shall constitute obligations of the Debtors with priority over any and all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, and over any and all administrative expenses or other claims under sections 105, 326, 328, 507(a) or 726 of the Bankruptcy Code (the

---

[3] A copy of the proposed interim DIP Financing Order (the "Interim Order") is attached hereto as <u>Exhibit C</u>. The description of the Interim Order and DIP Loan Documents contained herein is a summary only and should not be construed as modifying or limiting the terms thereof.
[4] See footnote No. 2.

8

"Superpriority Claims"), subject to the payment of the Carve Out or the Budgeted Professional Fees as provided below.

**Carve Out**. For the purposes hereof, the "Carve Out" means (i) all fees required to be paid to the Clerk of the Bankruptcy Court and to the Office of the United States Trustee, and (ii) budgeted professional fees, less any unapplied retainers.

**First Priority Lien on Cash Balances and Unencumbered Property**. Pursuant to section 364(c)(2) of the Bankruptcy Code, the DIP Lender is hereby granted a perfected, first priority, senior security interest in and lien upon any and all cash of the Debtors and any and all other pre and post petition property of the Debtors, whether existing on the Petition Date or thereafter acquired, that, on or as of the Petition Date is not subject to valid, perfected and non-avoidable liens (collectively, the "Unencumbered Property"). Unencumbered Property shall, however, exclude the Debtor's claims for causes of action and recoveries under sections 502(d), 544, 545, 547, 548, 549, 550, 551 or 553 of the Bankruptcy Code, or any other avoidance actions under the Bankruptcy Code (collectively, the "Avoidance Actions").

**DIP Lender's Priming Lien**. Pursuant to section 364(d)(1) of the Bankruptcy Code, the DIP Lender is hereby granted a perfected, first priority, senior security interest in and lien (the "DIP Liens") upon all pre and post petition property of the Debtors, whether now or hereafter acquired that is subject to the existing liens of the Lenders as of the Petition Date (the "Pre-Petition Liens"), including, without limitation, the Cash Collateral and the Property, *provided, however*, that such DIP Liens shall not be applicable to any of the DIP Financing used to pay the Debtors' attorneys' fees. The DIP Liens shall be senior in all respects, other than with respect to DIP Financing funds used to pay the Debtors' attorneys' fees, to the Pre-Petition Liens.

**No Section 506(c) Surcharge**. Except as set forth in the DIP Budget, no costs or expenses of any kind incurred in the Chapter 11 Cases by any party, including but not limited to the Debtors, shall be imposed against the DIP Lender pursuant to section 506(c) of the Bankruptcy Code or otherwise without the DIP Lender's prior written consent, which may grant or deny such consent in its sole and absolute discretion, and no such consent shall be implied or imposed based on any action or inaction of the DIP Lender.

**Treatment of DIP Financing Upon a Plan of Reorganization or Approval of a Sale Under Setion 363**. Notwithstanding anything herein to the contrary, upon confirmation of a plan of reorganization or approval of a sale of substantially all of the Debtors' assets under section 363 of the Bankruptcy Code, the DIP Financing shall be deemed to be (a) additional equity to the reorganized Debtors or (b) subordinated debt to any new mortgage loan issued to the reorganized Debtors or the purchaser of the Debtors' assets, as the case may be, secured by a junior lien on the Property, including, without limitation, all related personal property and other assets of the Debtors.

9

12. The terms of the proposed DIP Financing also are more fully provided for in the proposed Interim Order. The Debtors believe that the DIP Financing is necessary for the restructuring efforts of the Debtors and to preserve the value of the Debtors' assets. Additionally, the proposed DIP Financing is a condition precedent for the Lenders' consent to the Debtors' use of cash collateral. Because the Debtors were unable to procure financing on terms as favorable as those proposed by the DIP Lender, the Debtors believe that the inclusion of these provisions is reasonable under the circumstances.

## BASIS FOR RELIEF

13. The Debtors submit that ample justification exists for the approval of the DIP Financing under section 364 of the Bankruptcy Code. Approval of the DIP Financing is critical to the success of this case and the maximization of value for the Debtors' assets. Without the DIP Financing, the Debtors will, in all likelihood, be unable to operate the hotel, restaurant and banquet operations and restructure the assets under a plan of reorganization.

14. Section 364(c) of the Bankruptcy Code authorizes a debtor in possession to obtain post-petition credit:

If the trustee is unable to obtain unsecured credit allowable under section 503(b)(1) of this title as an administrative expense, the court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt –

(1) with priority over any or all administrative expenses of the kind specified in section 503(b) or 507(b) of this title;

(2) secured by a lien on property of the estate that is not otherwise subject to the lien; or

(3) secured by a junior lien on property of the estate that is subject to a lien.

10

11 U.S.C. 364(c).

15. Courts have articulated a three-part test to determine whether a debtor-in-possession is entitled to financing under § 364(c) of the Bankruptcy Code: whether (a) the debtor is unable to obtain unsecured credit under § 364(b), i.e., by allowing a lender only an administrative claim; (b) the credit transaction is necessary to preserve the assets of the estate; and (c) the terms of the transaction are fair, reasonable and adequate, given the circumstances of the debtor-borrower and the proposed lender. *See, e.g., In re Aqua Assocs.*, 123 B.R. 192, 195-96 (Bankr. E.D. Pa. 1991); *In re Ames Dep't Stores, Inc.*, 115 B.R. 34, 37-39 (Bankr. S.D.N.Y. 1990).

16. In this case, the Debtors are not able to obtain credit that is not secured and has not been granted super-priority administrative claim status. The Debtors' obligations to its Lenders are secured by substantially all of the Debtors' assets. Unless the Debtors can offer super-priority status to a debtor in possession lender, they will not be able to procure debtor in possession financing. Certainly, the Lenders have not been willing to extend debtor in possession financing. However, they do consent to the Debtors' use of cash collateral and to the DIP Financing provided herein. Under these circumstances, and given the Debtors' current financial status, the Debtors believe that the DIP Lender would not provide financing to the Debtors, other than on a secured and super-priority basis.

17. Moreover, the terms of the DIP Financing are fair and reasonable. The DIP Financing allows the Debtors to satisfy its necessary and ongoing budgeted operational and administrative expenses that are not satisfied by the Debtors' Cash Collateral, and continue operations without disruption for the benefit of the Debtors'

8926319.2

employees, creditors and other parties in interest. Accordingly, the Debtors submit that the Court should defer to the Debtors' business judgment that the terms of the DIP Financing are reasonable under the circumstances. See Group of Institutional Investors v. Chicago Milwaukee St. Paul & Pacific Railroad, 318 U.S. 523, 550 (1943); In re Simasko Prod. Co., 47 B.R. 444, 449 (D. Colo. 1985) ("Business judgments should be left to the board room and not to this Court."); In re Lifeguard Indus., Inc., 37 B.R. 3, 17 (Bankr. S.D. Ohio 1983) ("More exacting scrutiny would slow the administration of the debtor's estate and increase its costs, interfere with the Bankruptcy Code's provision for private control of administration of the estate, and threaten the court's ability to control a case impartially."); Richmond Leasing Co. v. Capital Bank N.A., 762 F.2d 1303, 1311 (5th Cir. 1985).

18.   Furthermore, § 364(d) of the Bankruptcy Code provides that a court may authorize the obtaining of credit or the incurring of debt secured by a senior or equal lien on property of the estate that is subject to a lien only if (A) the debtor is unable to obtain such credit otherwise; and (B) there is adequate protection of the interests of the holder of the lien on the property of the estates on which such senior or equal lien is proposed to be granted. 11 U.S.C. § 364(d)(1).

19.   The Lenders that hold pre-petition liens on and security interests in the Debtors' assets support the DIP Financing and the terms of the proposed Order that provide for priming liens in favor of the DIP Lender (with the limited exception for DIP Financing funds used to pay attorney's fees of the Debtors). Further, the influx of the DIP Financing on the terms hereof is a condition precedent to the Lenders' support of the Debtors' use of cash collateral.

20.    Based on the above, the Debtors submit that the DIP Financing is reasonable, appropriate and in the best interests of the Debtors' estates and their creditors and should be approved.

## FINAL HEARING

21.    The Debtors also request that this Court schedule a final hearing on the DIP Financing at the earliest date possible based on the Court's calendar and the requirements of Bankruptcy Rule 4001(c). If no party-in-interest files a written objection to the DIP Financing prior to the deadline set by this Court, the Debtors request that the Interim Order be deemed a Final Order for all purposes.

## NOTICE

22.    The Debtors have provided notice of this Motion to: (a) the Office of the United States Trustee; (b) the DIP Lender; (c) the Lenders; (d) the relevant taxing authorities; and (d) the holders of the twenty (20) largest unsecured claims against the Debtors. In light of the urgent circumstances, the Debtors submit that requisite notice of this Motion and the relief requested herein satisfies the requirements of Bankruptcy Rule 4001, which notice is sufficient for all purposes under the Bankruptcy Code, and no other notice need be given for approval of the Interim Order.

WHEREFORE, the Debtors respectfully request the entry of an order, in the form attached hereto as Exhibit C: (a) granting this Motion on an interim basis, pending the Final Hearing, on the terms set forth in the proposed Interim Order; (b) setting this Motion for Final Hearing pursuant to Bankruptcy Rule 4001, and at such hearing granting the relief requested herein on a permanent basis, on the terms set forth in the

8926319.2

proposed Interim Order; and (c) granting such other and further relief as this Court deems just and proper.

Dated: March 5, 2010

                Respectfully submitted,

                CLIFFBREAKERS HOLDINGS, LLC, et al.

                By:   /s/ Miriam R. Stein
                      One of Their Attorneys

Miriam R. Stein (ARDC #06238163)
ARNSTEIN & LEHR LLP
120 S. Riverside Plaza, Suite 1200
Chicago, IL 60606
Ph: (312) 876-7100/Fax: (312) 876-0288