# EXHIBIT – B
# LOAN DOCUMENTS

## REVOLVING LINE OF CREDIT PROMISSORY NOTE

$250,000.00                                                                   Rockford, Illinois
Issuance Date: March __, 2010

FOR VALUE RECEIVED, the undersigned CLIFFBREAKERS HOLDINGS, L.L.C., an Illinois limited liability company ("CH"), CLIFFBREAKERS RIVERSIDE RESORT, L.L.C., an Illinois limited liability company ("CRR"), and CLIFFBREAKERS PROPERTY INVESTMENTS, L.L.C., an Illinois limited liability company ("CPI" together with CH and CRR collectively, and jointly and severally, the "Maker" or "Debtors") hereby jointly and severally promise to pay to the order of PROGRESS INVESTMENTS, LLC, a Missouri limited liability company (the "DIP Lender"), at its principal office at 712 N. Second St., Ste. 300, St. Louis, Missouri 63102, or at such other place as the holder hereof may from time to time designate in writing (the "Holder"), the principal sum of TWO HUNDRED FIFTY THOUSAND AND NO/100 DOLLARS U.S. ($250,000.00), or so much thereof as may be advanced from time to time, together with interest on the unpaid principal balance from time to time outstanding (the "DIP Loan"), at the rates and at the times hereinafter provided.

## RECITALS

A. On the date hereof, the Maker filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases") in the United States Bankruptcy Court for the Northern District of Illinois, Western Division (the "Court").

B. Pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code, the Maker continues to operate the business and manage the financial affairs as Debtors-in- possession.

C. On the date hereof, the Maker filed a motion (the "Motion") for entry of interim order (the "Interim Order") (i) authorizing the Maker to incur post-petition debt ("DIP Financing") on a super priority basis pursuant to 11 U.S.C. §§105, 361, 362, 364(c)(1), 364(d)(1) and 507(b) of the United States Bankruptcy Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code") and Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") 2002, 4001(c) and 9014 from the DIP Lender pursuant to the terms of this Note and a Mortgage and Security Agreement; and (ii) providing other relief; and (iii) scheduling a final hearing to consider entry of a final order authorizing the DIP Financing.

D. As a result of the anticipated administrative expenses and the operational expenses of the Maker's business and the Chapter 11 Cases, the Maker has an immediate need for post-petition financing to pay the expenses set forth on the Budget (as defined in the Motion) to the extent that the Maker's cash collateral is insufficient to satisfy the expenses, and this Note is made to the DIP Lender to draw upon the DIP Financing to satisfy Budget expenses that are not satisfied by incoming cash receipts of the Maker, subject, however, to the Agreed Order Authorizing the Limited Use of Cash

Collateral and Granting Adequate Protection approved by the Court in the Chapter 11 Cases, and to pay all Debtors' professionals' fees and expenses allowed by the Court.

1. <u>Interest</u>. Interest on the outstanding principal amount of the Loan shall accrue from the date of disbursement and be payable at the rate equal to the sum of the Prime Rate plus two and seventy-five hundredths percent (2.75%) (the "Interest Rate") and be payable on the Maturity Date (defined below); provided, however, the Interest Rate shall not be less than six percent (6%) per annum and shall not exceed nine percent (9%) per annum. The "Prime Rate" shall mean the rate of interest as published by the Western Edition of *The Wall Street Journal*, from time to time as the prime rate, and shall change from time to time on the effective dates of, and in conformity with, changes in *The Wall Street Journal* prime rate. The Prime Rate is not necessarily the lowest rate charged by DIP Lender on its loans. Should The Wall Street Journal cease to publish the Primate Rate, then the Holder shall specify another index of interest rates that, in the discretion of the Holder (which shall be binding on the Maker absent manifest error) is reasonably comparable thereto, and that index shall constitute the Wall Street Journal prime rate. Interest on this Note is computed on a 365/360 simple interest basis; that is, by applying the ratio of the annual interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. Any interest rate change will not occur more than once daily.

2. <u>Principal</u>. If not sooner paid, all unpaid principal, all accrued and unpaid interest and all other sums due and payable under this Note shall be due and payable in full on the earlier of (i) _____, 2010, the date that is one hundred twenty (120) calendar days after the Issuance Date (the "Maturity Date") or (ii) the effective date of a confirmed plan of reorganization filed by Maker. All of the principal amount and interest of this Note will be due and payable on the Maturity Date. This Note is a revolving promissory note in that Maker may borrow, repay and reborrow amounts hereunder provided that the maximum amount outstanding will not exceed the amount permitted under the DIP Loan Documents (defined below).

3. <u>Prepayment</u>. Maker shall have the right to prepay all, or any portion, of the unpaid principal amount of the indebtedness evidenced by this Note at any time without the payment of any prepayment premium.

4. <u>Loan Documents</u>. The Maker is executing simultaneously herewith or has executed certain documents (this Note and such other documents are hereinafter collectively referred to as the "DIP Loan Documents"), including without limitation, the Mortgage and Security Agreement in favor of the DIP Lender. The indebtedness evidenced by this Note is secured by certain of the DIP Loan Documents, and all of the covenants, conditions and agreements contained in all of the DIP Loan Documents and the Interim Order approved by the Court are hereby made a part of and incorporated into this Note by this reference. In the event of any inconsistency between the terms of any of the DIP Loan Documents and the terms of the Interim Order approved by the Court, the terms of such Interim Order shall govern and control. Reference is hereby made to the DIP Loan Documents for a description of the security and description of the

collateral (the "Property") covered thereby, and the rights of the DIP Lender and the obligations of the Maker in respect thereto, but neither this reference to the DIP Loan Documents nor any provisions thereof shall affect or impair the obligation of the Maker to pay the principal and interest of this Note and all other sums or charges hereunder when due and payable in accordance with the terms and conditions hereof.

A default under this Note shall, at the option of the DIP Lender, also constitute a default under any or all of the other DIP Loan Documents. In addition to, and not in limitation of, the foregoing, a default under any or all of the other DIP Loan Documents shall, at the option of the DIP Lender, constitute a default under this Note.

5.   Method of Advances. Provided that no Default (as hereinafter defined) then exists, all payments and prepayments on account of the indebtedness evidenced by this Note shall be first applied to costs and expenses incurred by the DIP Lender in connection with this Note or the DIP Loan Documents, then to accrued and unpaid interest on the unpaid principal balance of this Note and the remainder, if any, to said principal balance.

All payments of principal and interest hereunder shall be paid in immediately available funds or check and shall be made at such place as Lender or the legal holder or holders of this Note may from time to time appoint, and in the absence of such appointment, then at the offices of the DIP Lender at 712 N. Second St., Ste. 300, St. Louis, Missouri 63102. Payment submitted in funds not available until collected shall not be credited against outstanding principal and interest until collected. If payment hereunder becomes due and payable on a Saturday, Sunday or legal holiday under the laws of the State of Illinois, the due date thereof shall be extended to the next succeeding business day, and interest shall be payable thereon at the Prime Rate during such extension.

6.   Business Loan. The Maker hereby expressly acknowledges and represents that the indebtedness evidenced by this Note is a "business loan" within the meaning of 815 ILCS 205/4(1)(c).

7.   Loan Fee. The Maker shall pay to the DIP Lender and/or the DIP Lender shall advance out of the proceeds of the Loan, a total loan fee of one percent (1%) of the aggregate amount of funds disbursed hereunder (the "Loan Fee"). The Loan Fee is deemed to be fully earned and non-refundable upon execution hereof.

8.   Superiority Claims. Pursuant to section 364(c)(1) of the Bankruptcy Code, all of the Maker's obligations, indebtedness and liabilities arising under or in respect of the DIP Financing and the Interim Order of even date herewith (collectively, the "DIP Obligations") and the Adequate Protection Obligations (as defined in the Motion) shall constitute obligations of the Maker with priority over any and all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, and over any and all administrative expenses or other claims under sections 105, 326, 328, 507(a) or 726 of the Bankruptcy Code (the "Superpriority Claims"), subject to the payment of the Carve Out or the Budgeted Professional Fees as provided in the Motion.

3

8920485.5

For the purposes hereof, the "Carve Out" means (i) all fees required to be paid to the Clerk of the Bankruptcy Court and to the Office of the United States Trustee, and (ii) budgeted professional fees, less any unapplied retainers.

9. <u>First Priority Lien on Cash Balances and Unencumbered Property</u>. Pursuant to section 364(c)(2) of the Bankruptcy Code, the DIP Lender is hereby granted a perfected, first priority, senior security interest in and lien upon any and all cash of the Maker and any and all other pre and post petition property of the Debtors, whether existing on the date hereof or hereafter acquired, that, on or as of the date hereof is not subject to valid, perfected and non-avoidable liens (collectively, the "Unencumbered Property"). Unencumbered Property shall, however, exclude the Debtor's claims for causes of action and recoveries under sections 502(d), 544, 545, 547, 548, 549, 550, 551 or 553 of the Bankruptcy Code, or any other avoidance actions under the Bankruptcy Code (collectively, the "Avoidance Actions").

10. <u>DIP Lender's Priming Lien</u>. Pursuant to section 364(d)(1) of the Bankruptcy Code, the DIP Lender is hereby granted a perfected, first priority, senior security interest in and lien (the "DIP Liens") upon all pre and post petition property of the Debtors, whether now or hereafter acquired that is subject to the existing liens of Fifth Third Bank and Arie Real Estate Fund, LLC as of the Petition Date (the "Pre-Petition Liens"), including, without limitation, the Cash Collateral and the Property, provided, however, that such DIP Liens shall not be applicable to any of the DIP Financing used to pay the Debtors' attorneys' fees. The DIP Liens shall be senior in all respects, other than with respect to DIP Financing funds used to pay the Debtors' attorneys' fees, to the Pre-Petition Liens.

11. <u>No Section 506(c) Surcharge</u>. Except as set forth in the DIP Budget, no costs or expenses of any kind incurred in the Chapter 11 Cases by any party, including but not limited to the Maker, shall be imposed against the DIP Lender pursuant to section 506(c) of the Bankruptcy Code or otherwise without the DIP Lender's prior written consent, which may grant or deny such consent in its sole and absolute discretion, and no such consent shall be implied or imposed based on any action or inaction of the DIP Lender.

12. <u>Treatment of DIP Financing Upon Confirmation of Plan or Sale</u>. Upon plan confirmation or approval of a sale of substantially all of the Maker's assets under section 363 of the Bankruptcy Code, the DIP Loan shall be deemed to be (a) additional equity to the reorganized Debtors in the Chapter 11 Cases or (b) subordinated debt to the New Mortgage Loan. For the purposes hereof, the "New Mortgage Loan" means the new mortgage loan issued to the reorganized Debtors in the Chapter 11 Cases or the purchaser of substantially all of the Debtors' assets in the Chapter 11 Cases, which shall be secured by a first priority lien against, among other assets, the Property.

13. <u>Default</u>. Upon any of the following events which remains uncured following ten (10) business days after written demand from DIP Lender, the entire unpaid principal balance of the indebtedness evidenced hereby, together with all

4

8920485.5

accrued but unpaid interest thereon required to be paid by the Maker under any of the DIP Loan Documents, shall become immediately due and payable:

    (a)    If the Maker fails to pay any sum on the date such payment is due as herein provided;

    (b)    If the Maker breaches any covenant or agreement herein or in any of the other DIP Loan Documents, and such failure remains uncorrected at the expiration of any applicable grace period provided for in the DIP Loan Documents;

    (c)    If the Maker shall for any reason cease to exist.

    14.    <u>Waiver</u>.  The Maker hereby waives demand, presentment for payment, protest, notice of protest, notice of nonpayment and any and all lack of diligence or delays in collection or enforcement of this Note or the other DIP Loan Documents, and expressly consents to any extension of time of payment hereof, release of any party primarily or secondarily liable hereunder or of any of the security for this Note, acceptance of other parties to be liable for any of the indebtedness evidenced hereby or under the other DIP Loan Documents or of other security therefor, or any other indulgence or forbearance which may be made, without notice to any party and without in any way affecting the liability of any party.  The Maker hereby waives, in favor of the holder hereof, any and all rights of contribution, subrogation, exoneration and any similar rights and interest so long as any amount evidenced by this Note, together with any additional amount secured by any of the DIP Loan Documents, remains unpaid.

    15.    <u>Forfeiture</u>.  The Maker hereby further expressly represents and warrants to the DIP Lender that the Maker has not committed any act or omission affording the federal government or any state or local government the right and/or remedy of forfeiture as against any of the property described in any of the DIP Loan Documents, or any part thereof, or any monies paid in performance of the Maker's obligations under this Note or under any of the other DIP Loan Documents.  The Maker hereby covenants and agrees not to commit, permit, or suffer to exist any act or omission affording such right and/or remedy of forfeiture.  In furtherance thereof, the Maker hereby agrees to indemnify, defend and hold harmless the DIP Lender from and against any loss, damage or other injury, including, without limitation, attorneys' fees and expenses to the fullest extent not prohibited by applicable law, and all other costs and expenses incurred by the DIP Lender in preserving its liens, security interests and other rights and interests in any of the property encumbered by any of the DIP Loan Documents in any proceeding or other governmental action asserting forfeiture thereof, by reason of, or in any manner resulting from, the breach of the covenants and agreements or the warranties and representations set forth in the preceding sentence.  Without limiting the generality of the foregoing, the filing of formal charges or the commencement of proceedings against the Maker, the DIP Lender, any guarantor, any property or collateral encumbered by any of the DIP Loan Documents under any federal or state law in respect of which forfeiture of such property or any part thereof or of any monies paid in performance of the Maker's obligations under the DIP Loan Documents is a

8920485.5

potential result, shall, at the election of the DIP Lender in its absolute discretion, constitute a default hereunder without notice or opportunity to cure.

16.  Governing Law.  This Note shall be construed and enforced according to, and governed by, the laws of the State of Illinois.

17.  Notices.  Except for any notice required under applicable law to be given in another manner, any notice, demand, request or other communication which any party hereto may be required or may desire to give hereunder shall be in writing and shall be deemed to have been properly given (i) if hand delivered or if sent by telecopy, effective upon receipt, or (ii) if delivered by overnight courier service, effective on the day following delivery to such courier service, or (iii) if mailed by United States registered or certified mail, postage prepaid, return receipt requested, effective two (2) days after deposit in the United States mails; addressed as follows:

If to Maker:

Cliffbreakers Holdings, L.L.C.
Cliffbreakers Riverside Resort, L.L.C. and
Cliffbreakers Property Investments, L.L.C.
700 W. Riverside Blvd.
Rockford, Illinois 61103
Attn:_____

With a copy to:

Philip E. Ruben
Arnstein & Lehr LLP
120 S. Riverside Plaza, Suite 1200
Chicago, IL 60606

If to DIP Lender:

Progress Investments, LLC
712 N. Second St., Ste. 300
St. Louis, Missouri 63102
Attn:  Victor Mattison

or at such other address or to such other addressee as the party to be served with notice may have furnished in writing to the party seeking or desiring to serve notice as a place for the service of notice.

18.  Cumulative Rights.  No delay on the part of the holder of this Note in the exercise of any power or right under this Note, under the Mortgage and Security Agreement, under any of the other DIP Loan Documents or under any other instrument executed pursuant hereto, shall operate as a waiver thereof, and no single or partial

6

exercise of any other power or right shall operate as a waiver thereof. Enforcement by the holder of this Note of any security for the payment thereof shall not constitute any election by it of remedies so as to preclude the exercise of any other remedy available to it.

19. <u>Liability; Binding Effect</u>. This Note shall be the obligation of the Maker, and shall be binding upon it and its respective heirs, personal representatives, successors and permitted assigns, whether expressed or not.

20. <u>Bankruptcy Court Approval.</u> The Maker and the DIP Lender expressly agree that the rights and obligations provided herein are subject to Court approval.

21. <u>WAIVER OF JURY TRIAL</u>. THE MAKER HEREBY, AND THE DIP LENDER BY ITS ACCEPTANCE HEREOF, EACH WAIVE THE RIGHT OF A JURY TRIAL IN EACH AND EVERY ACTION ON THIS NOTE OR ANY OF THE OTHER DIP LOAN DOCUMENTS, IT BEING ACKNOWLEDGED AND AGREED THAT ANY ISSUES OF FACT IN ANY SUCH ACTION ARE MORE APPROPRIATELY DETERMINED BY THE COURTS; FURTHER, THE MAKER HEREBY CONSENTS AND SUBJECTS ITSELF TO THE JURISDICTION OF ANY LOCAL, STATE OR FEDERAL COURTS HAVING SITUS WITHIN THE CITY OF CHICAGO, COUNTY OF COOK, STATE OF ILLINOIS AND, WITHOUT LIMITING THE GENERALITY OF THE FOREGOING, TO THE VENUE OF THE COURTS SITTING IN THE CITY OF CHICAGO, COOK COUNTY, ILLINOIS.

*[Signature Page Follows]*

8920485.5

IN WITNESS WHEREOF, the Maker has executed, sealed and delivered this Note as of the date and year first above written.

MAKER:

CLIFFBREAKERS HOLDINGS, L.L.C., an Illinois limited liability company

By: _____

Its: _____

CLIFFBREAKERS RIVERSIDE RESORT, L.L.C., an Illinois limited liability company

By: _____

Its: _____

CLIFFBREAKERS PROPERTY INVESTMENTS, L.L.C., an Illinois limited liability company

By: _____

Its: _____

This Instrument Was Prepared By:

# **MORTGAGE AND SECURITY AGREEMENT**

**THIS MORTGAGE and SECURITY AGREEMENT** (this "Mortgage") made this _____ day of March, 2010, between **CLIFFBREAKERS HOLDINGS, L.L.C.**, an Illinois limited liability company, **CLIFFBREAKERS RIVERSIDE RESORT, L.L.C.**, an Illinois limited liability company, and **CLIFFBREAKERS PROPERTY INVESTMENTS, L.L.C.**, an Illinois limited liability company (collectively, jointly and severally, hereinafter referred to as "Mortgagor" or "Borrower"), each having its address at 700 W. Riverside, Rockford, IL 61103 and **PROGRESS INVESTMENTS, LLC**, a Missouri limited liability company (referred to as "Mortgagee" or "Lender"), whose address is 712 N. Second St., Ste. 300, St. Louis, Missouri 63102.

**WHEREAS**, on the date hereof, Borrower filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases") in the United States Bankruptcy Court for the Northern District of Illinois, Western Division (the "Court");

**WHEREAS**, pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code, Borrower continues to operate the business and manage the financial affairs of the Cliffbreakers Riverside Resort in Rockford, Illinois as Debtors-in- possession;

**WHEREAS**, on the date hereof, Borrower filed a motion (the "Motion") for entry of interim order (the "Interim Order") (i) authorizing the Maker to incur post-petition debt ("DIP Financing") on a super priority basis pursuant to 11 U.S.C. §§105, 361, 362, 364(c)(1), 364(d)(1) and 507(b) of the United States Bankruptcy Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code") and Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") 2002, 4001(c) and 9014 from Lender pursuant to the terms of the Note (hereinafter defined) and this Mortgage; and (ii) providing other relief; and (iii) scheduling a final hearing to consider entry of a final order authorizing the DIP Financing;

**WHEREAS**, as a result of the anticipated administrative expenses and the operational expenses of the Borrower's business and the Chapter 11 Cases, Borrower has an immediate need for post-petition financing to pay the expenses set forth on the Budget (as defined in the Motion) to the extent that the Borrower's cash collateral is insufficient to satisfy the expenses, and the Note is made contemporaneously herewith to Lender to draw upon the DIP Financing to satisfy Budget expenses that are not satisfied by incoming cash receipts of Borrower, subject, however, to the Agreed Order Authorizing the Limited Use of Cash Collateral and Granting Adequate Protection to be approved by the Court in the Chapter 11 Cases; and

**WHEREAS,** Borrower is justly indebted to Lender in the sum of the lesser of (i) Two Hundred Fifty Thousand and No/100 Dollars U.S. ($250,000.00), or (ii) so much thereof as may be advanced from time to time ("Principal Balance") pursuant to the Note, together with interest on the unpaid principal and interest balance from time to time outstanding at the rates provided herein and in the Revolving Line of Credit Promissory Note (the "Note") of even date herewith, attached hereto as Exhibit B, as evidenced by the Note of this date, **of which, this Mortgage secures the Principal Balance and interest thereon** (collectively, the "Loan"), with final payment of principal and accrued interest thereon being due and payable in full on the earlier of (i) _____, 2010, the date which is one hundred twenty (120) calendar days after the issuance date of the Loan (the "Maturity Date") or (ii) the effective date of the Borrower's confirmed plan of reorganization in the Chapter 11 Cases.

**NOW, THEREFORE,** to secure the repayment of the Loan and such future or additional advances as may be made by Mortgagee, at its option and for any purpose, to Mortgagor or Mortgagor's permitted successor(s) in title, provided that all those advances are to be made within twenty (20) years from the date of this Mortgage (the total amount of indebtedness secured by this Mortgage may decrease or increase from time to time, but the total unpaid balance so secured at any one time shall not exceed five times the original principal amount of the Loan, plus interest and any disbursements made for the payment of taxes, levies or insurance on the property covered by the lien of this Mortgage with interest on those disbursements), and to secure the full and faithful performance of the covenants and agreements contained in the Note, this Mortgage and all other instruments and documents executed in connection with the Loan by Mortgagor and/or any other Obligor (the "Loan Documents"), Mortgagor hereby grants, bargains, sells, conveys, assigns, transfers, mortgages, pledges, delivers, sets over, warrants and confirms to Mortgagee, and grants Mortgagee a security interest in:

SEE EXHIBIT A ATTACHED HERETO

hereinafter referred to as "Property."

**TOGETHER** with all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances and rents, all of which shall be deemed to be and remain a part of the property covered by this Mortgage, and all of the foregoing, together with said property (or the leasehold estate if this Mortgage is on a leasehold) are hereafter referred to as the "Collateral."

Borrower covenants that Borrower is lawfully seized of the estate hereby conveyed and has the right to mortgage, grant and convey the Collateral and that the Collateral is unencumbered, except of the above described mortgage. Borrower warrants and will defend generally the title to the Collateral against all claims and demands.

2

8920710.5

1.  **PAYMENT OF INDEBTEDNESS**: Borrower shall promptly pay to Lender the secured indebtedness with interest hereon as provided in the Note and this Mortgage.

2.  **PAYMENT OF TAXES, ASSESSMENTS AND PREMIUMS**. Borrower shall pay, at least fifteen (15) days prior to the date when such payments are due (a) all taxes, assessments (general or special) and other charges which may attain priority over this Mortgage, (b) premiums on policies of fire and other hazard insurance covering the Collateral, as required in Article 3 below, (c) premiums for public or private mortgage insurance, if this Mortgage and the Note are so insured, and (d) all payments required by any mortgage which is or may hereafter become superior to the priority of this Mortgage. Borrower shall promptly deliver to Lender receipts showing payment in full of all of the above items.

3.  **INSURANCE.**

    a.  Borrower shall keep the Collateral insured for the benefit of Lender against loss or damage by fire, hazards included within the term "extended coverage," and such other hazards as Lender may from time to time require, all in amounts approved by Lender not exceeding 100% of full insurable value. All such insurance shall be in form and substance and written by companies approved by Lender, whose approval shall not be unreasonably withheld. All policies and renewals thereof shall include a standard mortgage clause in favor of and in acceptable form to the Lender. If by reason of such insurance Lender receives any money for loss or damage, it may, at its option, retain and apply the money toward payment of the secured indebtedness as a curtailment to the balance and required the Borrower to continue paying the scheduled payments until this indebtedness has been paid in full.

    b.  In the event of a foreclosure of this Mortgage, the Purchaser of the Collateral shall succeed to all rights of Borrower, including any right to unearned premiums in and to all policies of insurance assigned and delivered to Lender pursuant to the provisions of this Article, with respect to all property conveyed by this Mortgage.

4.  **DUTY TO REPAIR**. Borrower shall maintain the Collateral in good condition and repair, shall not commit or suffer any waste to the Collateral, and will comply with, or cause to be complied with, all restrictive covenants, statutes, ordinances and requirements of any governmental authority relating to the Collateral or its use. Borrower shall promptly repair, restore, replace or rebuild any damaged or destroyed portion of the Collateral. No part of the Collateral shall be removed, demolished or materially altered without prior written consent of Lender.

5.  **CONDEMNATION.** This Borrower shall continue to pay principal and interest on the secured indebtedness even if the Collateral is decreased in value by

3

8920710.5

action of any public or quasi-public authority or corporation, or is taken by eminent domain. Any award or payment for such taking, alteration, injury or decrease in value may, at the Lender's option, be applied toward payment of the secured indebtedness or be paid over, in whole or in part, to Borrower to restore or rebuild any part of the Collateral affected by such action, or for any other purpose satisfactory to Lender.

6. **TRANSFER OF THE PROPERTY.** Borrower acknowledges and agrees that both the credit and the interest rate extended by Lender on the secured indebtedness are personal commitments between Borrower and Lender and shall not inure to the benefit of or be assumed by any third party without Lender's written consent.

7. **EVENTS OF DEFAULT.** Each of the following events shall constitute an "Event of Default" under this Mortgage:

a. Should Borrower fail to pay the secured indebtedness within fifteen (15) days from the due date, or any other payment required under this Mortgage, whether or not subsequently advanced by Lender, when due and payable;

b. Should Borrower default under any duties or agreements of this Mortgage, any prior mortgage, or if Borrower extends or otherwise modifies any prior mortgage without the prior written consent of Lender.

c. Except with respect to the pending Chapter 11 Cases, should Borrower make any assignment for the benefit of creditors, should a receiver, liquidator or trustee of Borrower or any of Borrower's property be appointed, should any petition for the bankruptcy, reorganization or arrangement of Borrower, pursuant to the Federal Bankruptcy Code or any similar statute be filed, should Borrower be adjudicated a bankrupt or insolvent, or in any proceeding admit insolvency or inability to pay debts as they fall due, should Borrower, if a corporation, be liquidated or dissolved or its articles of incorporation expire or be revoked, should Borrower, if a partnership or business association, be dissolved or partitioned, or should Borrower, if a trustee, be terminated or expire.

d. If foreclosure proceedings should be instituted against the Property covered by this Mortgage upon any other lien or claim whether alleged to be superior or junior to the lien of this Mortgage, the Mortgagee may, at its option, immediately upon institution of such suit or during the pendency thereof, declare this Mortgage and the indebtedness secured hereby due and payable forthwith and may at its option proceed to foreclose this Mortgage.

e. The Mortgagor shall faithfully and fully comply with and abide by each and every term, covenant, and condition of any superior mortgage or mortgages and never permit the same to go into default. A default or delinquency under any

4

8920710.5

superior mortgage or mortgages shall automatically and immediately constitute an Event of Default under this Mortgage. The Mortgagee is hereby expressly authorized at the option of the Mortgagee, to advance all sums necessary to keep any superior mortgage or mortgages in good standing, and all sums so advanced together with interest thereon at the default rate set forth in the Note shall be determined additional monies owed by the Mortgagor to the Mortgagee, shall be payable on demand of the Mortgage, and secured by the lien of this Mortgage.

8.     **REMEDIES ON DEFAULT.** If in the Event of Default, Lender may do any one or more of the following and shall not be required to elect between remedies:

a.     Pay any sums in any form or manner deemed reasonable, expedient or desirable by Lender to protect the security of this instrument or to cure any Event of Default other than payment of interest or principal on the secured indebtedness. Any amounts disbursed by Lender pursuant to this section, with interest thereon at the Note rate, shall become additional indebtedness of Borrower secured by this Mortgage unless Borrower and Lender agree to other terms of payment, such amounts shall be payable upon notice from Lender to Borrower requesting payment thereof. Nothing contained in this section shall require Lender to incur any such expense or take any such action, and Lender's disbursement of any amounts pursuant to this section shall not affect Lender's right of acceleration and foreclosure as provided below.

b.     Declare the entire indebtedness immediately due, payable and collectible without notice to Borrower regardless of maturity. Provided that the Chapter 11 Cases have been dismissed or the automatic stay in the Chapter 11 cases has been modified accordingly, and the Collateral is foreclosed upon, Lender, or its assigns, shall be entitled to receive at such foreclosure all unpaid secured indebtedness with accrued interest thereon including any and all amounts advanced by Lender for taxes, assessments, fire insurance premiums and other charges with interest at the Note rate from date of payment, together with all costs of such foreclosure and sale of the Collateral, including reasonable attorney's fees whether or not suit is instituted and for all states of any legal proceedings, including any award of fees by an appellate court. In any judicial proceeding under this Mortgage outside the Chapter 11 Cases, the Collateral or any part thereof may be sold in one parcel or in such parcels, manner or order as Lender in its sole discretion may elect.

9.     **REMEDIES CUMULATIVE.**   The rights of Lender contained in this Mortgage and in the Note shall be separate, distinct and cumulative of other powers and rights which Lender may have in law or equity, and no act of Lender shall be construed as an election to proceed under any one provision to the exclusion of any other remedy allowed at law or in equity.

5

8920710.5

10. **FORBEARANCE.** Any indulgence or departure at any time by Lender from any of the provisions of this Mortgage or any obligation it secures shall not modify that provision or waive its future compliance by Borrower.

11. **BANKRUPTCY COURT APPROVAL.** Borrower and Lender expressly agree that the rights and obligations provided herein are subject to Court approval.

12. **INTERIM ORDER INCORPORATED HEREIN.** Borrower and Lender expressly agree that the Interim Order approved by the Court is hereby made a part of and incorporated into this Mortgage by this reference. In the event of an inconsistency between the terms of this Mortgage and the Interim Order approved by the Court, the terms of such Interim Order shall govern and control.

13. **MISCELLANEOUS.** The words "Borrower" and "Lender" whenever used herein shall include all individuals, corporations (and, if a corporation, its officers, employees or agents) and any and all other persons or entities, and the respective heirs, legal representatives, successors and assigns of the parties hereto, all those holding under any of them, and, when appropriate, both singular and plural. The word "note" shall also include one or more notes and the grammatical construction of sentences shall conform thereto. In the event that any provision or clause of this Mortgage or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Mortgage or the Note which can be given effect without the conflicting provision, and to this end the provisions of this Mortgage and the Note are declared to be severable.

**IN WITNESS WHEREOF,** Borrower has executed this Mortgage on the day and year first above written.

Signed, sealed and delivered
in the presence of:

                              CLIFFBREAKERS HOLDINGS, L.L.C., an
                              Illinois limited liability company

                              By: _____

                              Its: _____


                              CLIFFBREAKERS RIVERSIDE RESORT,
                              L.L.C., an Illinois limited liability company

8920710.5

By: _____

Its: _____


CLIFFBREAKERS PROPERTY INVESTMENTS, L.L.C., an Illinois limited liability company


By: _____

Its: _____


_____
Name:

_____
Name:


STATE OF ILLINOIS
COUNTY OF WINNEBAGO

    The foregoing document was acknowledged before me this ____ day of March, 2010, by _____, as a Manager of CLIFFBREAKERS HOLDINGS, L.L.C., an Illinois limited liability company, and CLIFFBREAKERS RIVERSIDE RESORT, L.L.C., an Illinois limited liability company, and CLIFFBREAKERS PROPERTY INVESTMENTS, L.L.C., an Illinois limited liability company, who is personally known to me or who have produced _____ as identification.

_____
Name:
Notary Public, State of Illinois

My commission expires:

# EXHIBIT A

Property Description

8

8920710.5

# EXHIBIT B