## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
## WESTERN DIVISION

| | | |
|---|---|---|
| **In re** | ) | **Chapter 11** |
| | ) | |
| **CLIFFBREAKERS RIVERSIDE RESORT, LLC,** | ) | **Case No. 10-71036** |
| **et al.,** | ) | **(Jointly Administered)** |
| | ) | |
| | ) | **Hon. Manuel Barbosa** |
| **Debtors.** | ) | |

## ORDER AUTHORIZING THE LIMITED
## USE OF CASH COLLATERAL AND GRANTING ADEQUATE PROTECTION

This matter coming to be heard initially upon the emergency motion (the "Motion") of

Cliffbreakers Holdings, LLC ("Holdings"), Cliffbreakers Riverside Resort, LLC ("Resort"), and

Cliffbreakers Property Investments, LLC ("Investments"), debtors and debtors in possession

(collectively, the "Debtors"), for the entry of an order (A) authorizing the Debtors to use certain

"Cash Collateral" (as defined in section 363(a) of the United States Bankruptcy Code, 11 U.S.C.

§101, *et. seq.* (the "Bankruptcy Code") and hereinafter referred to as "Cash Collateral"), all of

which Cash Collateral is presently subject to senior security interests, liens, mortgages and rights

of setoff of Fifth Third Bank ("Fifth Third"), and junior security interests, liens, mortgages and

rights of setoff of Aries Real Estate Fund, LLC f/k/a Freeman Realty Advisors, Inc. ("Aries" and

together with Fifth Third, the "Lenders"), and (B) granting certain substitute and additional liens

and other relief for the benefit of the Lenders; the Court having previously entered an interim

order on March 8, 2010 approving the Debtors' use of Cash Collateral on an interim basis (the

"Interim Order"); further notice of the Motion having been given pursuant to the Interim Order;

and the Lenders having consented to the use of certain Cash Collateral pursuant to the terms of

this Order.

THE COURT HAS BEEN ADVISED THAT THE DEBTORS AND THE LENDERS

HAVE STIPULATED TO THE FOLLOWING:

A.     On March 5, 2010 (the "Petition Date"), the Debtors filed voluntary petitions for
relief under chapter 11 of the Bankruptcy Code.  Pursuant to sections 1107 and 1108 of the
Bankruptcy Code, the Debtors have retained possession of their property and continue to operate
their businesses as debtors-in-possession.

B.     Investments is indebted to Fifth Third pursuant to a Loan Agreement dated
November 3, 2006 (the "Fifth Third Loan Agreement"), a Mortgage, Security Agreement,
Assignment of Rents and Leases and Fixture Filing dated November 3, 2006 (the "Fifth Third
Mortgage"), a Promissory Note dated November 3, 2006 in the principal sum of $11,280,000 (the
"Fifth Third Promissory Note"), and an Assignment of Leases and Rents dated November 3, 2006
(the "Fifth Third Assignment of Leases and Rents").  Resort is indebted to Fifth Third pursuant to
a Revolving Note dated March 20, 2007 in the principal sum of $100,000 (the "Fifth Third
Revolving Note").  Pursuant to the Fifth Third Loan Agreement, the Fifth Third Mortgage, the
Fifth Third Promissory Note, the Fifth Third Assignment of Leases and Rents, the Fifth Third
Revolving Note and all other loan documents executed by the Debtors in connection therewith
(collectively, the "Fifth Third Loan Documents"),  Fifth Third agreed to make, and has made,
various advances to the Debtors (the "Fifth Third Loans").  On the Petition Date, Investments and
Resort, collectively, were indebted to Fifth Third pursuant to the Fifth Third Loan Documents in
the original principal amount of $11,433,010.88 (that principal amount, together with all interest,
fees, costs, expenses and other amounts now or hereafter owing or accruing pursuant to the Fifth
Third Loan Documents are collectively referred to hereinafter as the "Fifth Third Indebtedness").
The Fifth Third Indebtedness is secured by all or substantially all of Investments' assets, including,

without limitation the real and personal property located at 700 W. Riverside in Rockford, Illinois and known as Cliffbreakers Riverside Resort (such assets immediately prior to the Petition Date being referred to herein as the "Prepetition Collateral") pursuant to the Fifth Third Loan Documents.

C.      Investments is indebted to Aries (the "Aries Indebtedness") pursuant to a Loan and Security Agreement dated November 3, 2006, a Secured Promissory Note dated November 3, 2006 in the principal amount of $1,500,000 and a Junior Mortgage dated November 3, 2006 (together with all other loan documents executed by the Debtors, the "Aries Loan Documents"). The Aries Indebtedness is secured by a junior lien on and security interest in all of the Prepetition Collateral, which liens and security interests are junior in all respects to those of Fifth Third in the Prepetition Collateral.

D.      Pursuant to the Fifth Third Loan Documents, Fifth Third has a valid and perfected first priority security interest in, *inter alia*, the cash proceeds of, and rents produced by, the Prepetition Collateral. Pursuant to the Aries Loan Documents, Aries has a valid and perfected junior security interest in, *inter alia*, the cash proceeds of, and rents produced by, the Prepetition Collateral. Cash proceeds of, and rents from, the Prepetition Collateral that come into the possession, custody or control of the Debtors constitute Cash Collateral.

E.      The Lenders have indicated a willingness to consent to the Debtors' use of a limited amount of Cash Collateral for a limited period of time and only pursuant to the terms of this Order, on the condition that the Court, pursuant to sections 361 and 363 of the Bankruptcy Code, provides to the Lenders as adequate protection (1) security interests in and liens and mortgages upon all of the property of the Debtors and their estates (the "Estates"), whether now

existing or hereafter acquired or arising, except as provided herein and to the same extent and priority as the Lenders' respective prepetition security interests, liens, and mortgages, and (2) the other relief accorded the Lenders pursuant to this Order.

F.      The Debtors in consideration of Fifth Third's consent to the use of Cash Collateral according to the terms of this Order (1) agree not to contest the validity or enforceability of Fifth Third's security interests, mortgages or liens in the Prepetition Collateral or the proceeds, rents, products or profits thereof and (2) waive any right they may have to seek avoidance of Fifth Third's security interests in and mortgages and liens on the Prepetition Collateral or the proceeds, rents, products or profits thereof.

G.      As a result of the Debtors' insufficient available working capital to finance its postpetition operations, the authorization of the use of Cash Collateral is necessary to operate the Debtors' business.

BASED UPON THE MOTION, THE RECORD BEFORE THE COURT, AND THE COMBINED CONSENT OF THE DEBTORS AND THE LENDERS TO THE ENTRY OF THIS ORDER, THE COURT FINDS AS FOLLOWS:

i.      The Debtors have provided such notice of the hearing on the Motion as required by Rule 4001(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") to (1) the Lenders, (2) the Debtors' 20 largest unsecured creditors, (3) the United States Trustee for this district, and (4) all parties requesting notice of motions in these cases.  The Court expressly finds that such notice is adequate and sufficient under the circumstances and under Bankruptcy Rule 4001(b), and that no further or other notice need be given.

ii.    A need exists for the Debtors to use Cash Collateral in order to maintain their business operation. The Debtors require Cash Collateral for the payment of, *inter alia*, operating expenses, payroll, and the purchase of inventory and supplies to meet other expenses necessary to preserve their assets and continue their operation.

iii.    The Lenders will not agree to consent to the usage of Cash Collateral except on the terms and conditions contained in this Order and are relying on such terms and conditions in agreeing to the Debtors' use of Cash Collateral on the terms hereof.    It is necessary and appropriate for the Debtors to grant to the Lenders liens, security interests and mortgages in the property of the Estates as set forth in this Order and to provide the Lenders the other rights and protections set forth herein.

iv.    Good cause has been shown for the entry of this Order.  Among other things, entry of this Order will minimize disruption of the Debtors as a going concern, will increase the possibility for successful chapter 11 cases, and is in the best interests of the Debtors, their creditors and the Estates.  The terms of the use of Cash Collateral authorized hereby are fair under the circumstances and reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties.

v.    The Lenders and the Debtors have (1) negotiated the terms and conditions of this Order in good faith and at arms-length and (2) offered sufficient evidence of the good faith of the Lenders in agreeing to this Order and the Debtors' use of the Cash Collateral on the terms set forth herein.

NOW THEREFORE, IT IS HEREBY ADJUDGED, ORDERED AND DECREED THAT:

1.    For purposes of this Order, the term "Cash Collateral" shall be deemed to include all cash and cash equivalents of the Debtors, including all rents of the Debtors, all deposits

subject to setoff and all cash and cash equivalents arising from the collection or other conversion

to cash and cash equivalents of the Debtors' property.

**Cash Collateral Usage**

2.      Subject to the terms and conditions contained in this Order, the Debtors may use

Cash Collateral during the period commencing on the date of the entry of this Order through and

including the earlier of: (a) 5:00 p.m. (Chicago Time) on May 12, 2010; (b) 28 days after Fifth

Third provides notice to the Debtors that it is terminating its consent to the use of Cash

Collateral; (c) the entry by this Court of an order reversing, amending, supplementing, staying,

vacating or otherwise modifying the terms of this Order; (d) the conversion of one or more of the

Debtors' cases to a case under chapter 7 of the Bankruptcy Code; (e) the appointment of a trustee

or examiner or other representative with expanded powers for the Debtors; or (f) the occurrence

of the effective date or consummation of a plan of reorganization (the first such occurrence being

hereinafter referred to as the "Termination Event").   On and after the Termination Event, the

Debtors shall immediately cease using any of the Cash Collateral; *provided, however*, that the

Debtors reserve the right to seek Court authorization to continue to use such Cash Collateral, and

Fifth Third reserves the right to oppose such relief.

3.      The Debtors shall use or consume Cash Collateral only (a) in accordance with the

budget attached hereto as Exhibit A (the "Budget"), including the time period and category limits

set forth therein, with a permitted 10% deviation of each line item, and (b) in compliance with

the other terms of this Order.  The Debtors may use Cash Collateral for expenses not listed on

the Budget only upon prior written consent of Fifth Third.  To the extent the Debtors do not use

all of the funds allocated to a particular line item in the Budget for a particular week, the Debtors

may add the unused funds to the amount allocated to the same line item in the Budget for the

following week.  The cumulative amount of Cash Collateral usage during such period shall not

exceed the amount set forth in the Budget for such period with a permitted 10% deviation of each line item. Notwithstanding the foregoing, the Debtors and the Lenders may mutually agree to amend the Budget at any time without further Court order.

4.     Notwithstanding anything to the contrary herein contained, the Debtors may not use any Cash Collateral to compensate legal services rendered to or legal expenses incurred by the Debtors unless the Debtors confirm a plan of reorganization acceptable to Fifth Third, in its sole discretion.

## Adequate Protection Liens

5.     As adequate protection for the Lenders' interests as of the Petition Date in the Prepetition Collateral, the Lenders are hereby granted, pursuant to sections 361 and 363 of the Bankruptcy Code, valid, choate, perfected, enforceable and non-avoidable security interests in and liens and mortgages upon all assets and property of the Debtors and the Estates, of any kind or nature whatsoever, whether now existing or hereafter acquired or arising, and all proceeds, rents, products or profits thereof (collectively, the "Postpetition Collateral" and, together with the Prepetition Collateral, the "Collateral"), including, without limitation, the Prepetition Collateral owned by the Debtors as of the Petition Date and all proceeds, rents, products or profits thereof, to the same extent and priority as the Lenders' respective prepetition security interests, liens, and mortgages. Such security interests, liens and mortgages shall at all times be senior to the rights of the Debtors and any successor trustee in these or any subsequent proceedings under the Bankruptcy Code and shall be superior in priority to the Lenders' security interests, liens and mortgages existing prior to the Petition Date. Notwithstanding the foregoing, the Lenders are not hereby granted a security interest or lien in any cause of action of the Estates arising solely under sections 544, 545, 547, 548, 549 or 553(b) of the Bankruptcy Code. The liens, security interests,

mortgages, rights and remedies granted to the Lenders pursuant to this Order shall not be modified, altered or impaired in any manner by any plan of reorganization or order of confirmation for the Debtors.

6.    The security interests, liens and mortgages granted herein (a) are and shall be in addition to all security interests, liens, mortgages and rights of setoff existing in favor of the Lenders on the Petition Date and (b) are and shall be valid, choate, perfected, enforceable, non-avoidable and effective as of the Petition Date without any further action by the Debtors or the Lenders and without the execution, filing or recordation of any financing statements, security agreements, vehicle lien applications, mortgages or other documents. All security interests, liens and mortgages granted herein to the Lenders be and they hereby are deemed perfected, and no further notice, filing or other act shall be required to effect such perfection. If the Lenders shall, in their sole discretion, choose to file financing statements, mortgages or other documents or otherwise confirm perfection of such security interests, liens or mortgages, the Lenders are authorized to effect such filings and recordations, and all such financing statements, mortgages or similar documents shall be deemed to have been filed or recorded at the time and on the date of entry of this Order. A photocopy of this Order may, in the discretion of the Lenders be filed with or recorded in filing or recording offices in addition to or in lieu of such financing statements, notices of lien or similar instruments, and all filing offices are hereby directed to accept such copy of this Order for filing and recording. If the Lenders hereafter request the Debtors to execute and deliver to the Lenders financing statements, mortgages or other instruments or documents considered by the Lenders to be necessary or desirable to further evidence the perfection of the liens, security interests or mortgages granted in this Order, the

Debtors are hereby authorized and directed to execute and deliver those financing statements, instruments and documents.

7.      Nothing in this Order shall in any way restrict the scope of the Lenders' prepetition liens, security interests, mortgages, rights of setoff or claims with respect to the Fifth Third Indebtedness, the Aries Indebtedness, or the Prepetition Collateral, or the proceeds, rents, products or profits thereof.

8.      Nothing contained in this Order or otherwise, and no action or inaction of the Lenders shall be deemed to be a consent by the Lenders to any charge, lien, assessment or claim against the Collateral under section 506(c) of the Bankruptcy Code or otherwise.

**Additional Protection**

9.      In addition to the foregoing protections, except where inconsistent with the Bankruptcy Code, the Bankruptcy Rules or orders of this Court in this case, the Debtors shall fully comply with the obligations as set forth in the Fifth Third Loan Documents, with respect to (a) access to the Debtors' books and records and the Prepetition Collateral, which provisions shall be deemed to apply to all of the Collateral, (b) financial and other reporting to be reasonably specified by the Lenders, (c) inspections, (d) maintenance and preservation of Prepetition Collateral, which provisions shall be deemed to apply to all of the Collateral, (e) operations and (f) the other provisions therein where not inconsistent with the Bankruptcy Code, the Bankruptcy Rules or orders of this Court in these cases.

**Miscellaneous**

10.     The Debtors: (a) hereby release and discharge Fifth Third and its agents, attorneys, officers, directors, affiliates and employees from any and all claims and causes of action arising out of the relationship of Fifth Third with the Debtors in connection with the entry

of this Order; and (b) hereby waive any and all defenses to Fifth Third's security interests in and

liens and mortgages on the Prepetition Collateral.

11.     Nothing in this Order shall be construed to preclude the Illinois Department of

Revenue (the "Department") from attempting to establish that funds held by the Debtors or any

other party are held in trust for the Department and shall not preclude the Department from

seeking additional relief with respect to those funds.  Likewise, nothing in this order shall

preclude the Debtors or any creditor (including Fifth Third) from challenging any such assertions

or contending that any such funds are not held in trust for the Department.  The security interests

provided for herein shall not diminish in any way the rights, if any, of the Department as a trust

fund claimant to obtain possession of funds subject to its trust claims or to impose any additional

liability on the holder of the trust funds to the extent allowed by law.  Funds which the Court,

after notice and hearing, may determine constitute trust funds of the Department shall not

constitute the collateral of any secured creditor.

12.     No third party is intended to be or shall be deemed to be a third party beneficiary

of the provisions of this Order.

13.     The subject of this Order is a "core" proceeding within the meaning of 28 U.S.C.

§ 157.  This Order shall be valid and fully effective, shall be binding upon and inure to the

benefit of the Lenders, the Debtors, the Estates and their respective successors and assigns

(including, without limitation, any trustee or examiner in this or any subsequent proceeding

under the Bankruptcy Code), immediately upon its entry and during the pendency of the Debtors'

bankruptcy proceedings, subject to the right of the Lenders to terminate its consent to the

Debtors' use of Cash Collateral as provided in this Order or the expiration of such consent on the

date set forth herein.

14.   If any or all of the provisions of this Order are hereafter modified, vacated or stayed by subsequent order of this or any other Court, such stay, modification or vacation shall not affect (a) the validity of any benefit granted to the Lenders pursuant to this Order with respect to any Cash Collateral released by the Lenders to the Debtors prior to the later of (i) the effective date of such stay, modification or vacation and (ii) receipt of written notice thereof by counsel to the Lenders (the "Effective Time") or (b) the validity and enforceability of any liens, security interests, mortgages or priority authorized hereby.  Notwithstanding any such stay, modification or vacation, any release of Cash Collateral made pursuant to this Order by the Lenders prior to the Effective Time shall be governed in all respects by the original provisions of this Order.

**Further Hearing**

15.   A further hearing on the Debtors' continued use of Cash Collateral shall be held on May 12, 2010 at 10:30 a.m.

Dated: April 7, 2010.

APR  7 2010

_____
UNITED STATES BANKRUPTCY JUDGE

AGREED TO IN FORM AND SUBSTANCE BY:

| | |
|---|---|
| ARNSTEIN & LEHR LLP<br>David A. Golin<br>Miriam R. Stein<br>120 S. Riverside Plaza, Ste. 1200<br>Chicago, IL 60606<br>Phone: (312) 876-7100<br>Facsimile: (312) 876-0288<br><br>*Counsel to the Debtors* | PERKINS COIE LLP<br>David M. Neff<br>Brian A. Audette<br>131 S. Dearborn St., Ste. 1700<br>Chicago, IL 60603<br>Phone: (312) 324-8400<br>Facsimile: (312) 324-9400<br><br>*Counsel to Fifth Third Bank* |

91004-0040/LEGAL17982107.2
8968737.1

11

## Cliffbreakers
### Cash Flow Model March 5 - May 15, 2010

| | March 5 - March 13 | March 14 - March 20 | March 21 - March 27 | March 28 - April 3 | April 4 - April 10 | April 11 - April 17 | April 18 - April 24 | April 25 - May 1 | May 2 - May 8 | May 9 - May 15 |
|---|---|---|---|---|---|---|---|---|---|---|
| **Cash Inflows** | | | | | | | | | | |
| Opening Cash | 35,000 | | | | | | | | | |
| New Cash (DIP Financing) | 155,000 | | | | | | | | | |
| Restaurant | 11,400 | 10,000 | 10,000 | 10,500 | 30,000 | 10,000 | 10,000 | 10,000 | 10,000 | 30,000 |
| Banquet | 42,300 | 15,000 | 29,000 | | 10,100 | 18,159 | 41,465 | 15,408 | 34,258 | 15,834 |
| Hotel | 30,600 | 10,500 | 14,800 | 16,200 | 14,720 | 15,500 | 16,250 | 15,000 | 12,500 | 10,000 |
| **Total Cash Inflows** | 274,300 | 35,500 | 53,800 | 26,700 | 54,800 | 43,659 | 67,715 | 40,408 | 56,750 | 59,834 |
| | | | | | | | | | | |
| **Cash Outflows** | | | | | | | | | | |
| Gross Payroll | | 39,300 | | 39,300 | | 41,020 | | 41,000 | | 41,000 |
| **Taxes:** | | | | | | | | | | |
| - Payroll Taxes (FUTA, SUTA, State Income) | | 5,109 | | 5,109 | | 5,330 | | 5,330 | | 5,330 |
| - Sales Tax (City and State) | | | 13,000 | | | | 16,000 | | | |
| - Hotel Tax (City and State) | | | 7,000 | | | | 9,000 | | | |
| - Other Taxes | | | 5,000 | | | | 6,000 | | | |
| Property Tax | | | | | | | | | | |
| Management | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 |
| **Professional Services/Fees:** | | | | | | | | | | |
| - Legal | 4,000 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 |
| - Accounting | 3,500 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 |
| - Marketing/Communications | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 |
| - Other | | | | | | | | | | |
| Food and Liquor | 11,500 | 7,500 | 8,500 | 8,500 | 10,508 | 8,448 | 15,435 | 7,627 | 13,275 | 14,563 |
| Allowance for Food and Liquor Deposits | 7,500 | | | | | | | | | |
| Supplies | | 5,000 | | | | | 5,000 | | | |
| Lexington Brand Fee | | 2,500 | 2,300 | | | | | 2,300 | 2,500 | |
| Insurance | | | | | 14,000 | | | | | |
| US Trustee Fees | 1,650 | 1,650 | 1,650 | 1,650 | 1,650 | 1,650 | 1,650 | 1,650 | 1,850 | 1,650 |
| Bank Fees | | | | | | | | | | |
| Water and Waste | | 5,500 | | | | | 5,500 | | | |
| Utilities (Gas, Electric, TV, Phone) | | 3,000 | 7,500 | 2,400 | | 3,000 | 7,540 | 2,400 | | 3,000 |
| Allowance for Utility Deposits | 20,000 | | | | | | | | | |
| Equipment and Vehicle Leases | | | 1,700 | | | | 1,700 | | | |
| Miscellaneous | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 |
| | | | | | | | | | | |
| **Total Cash Outflows** | 58,650 | 82,559 | 59,650 | 69,959 | 39,150 | 72,428 | 80,789 | 73,382 | 30,425 | 78,930 |
| | | | | | | | | | | |
| Net Weekly Cash Flows | 215,650 | (47,059) | (5,850) | (43,259) | 15,650 | (28,769) | (13,075) | (32,895) | 26,325 | (19,096) |
| Cumulative Cash Flows | 215,650 | 168,591 | 162,741 | 119,482 | 135,132 | 106,363 | 93,289 | 60,394 | 86,719 | 67,623 |



EXHIBIT A

tabbies